UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSE DIAZ and )<br>CHRISTIAN REYES , )<br>)<br>Defendants ) | Case No. 3:14-cr-30006-MGM |

MEMORANDUM AND ORDER ON DEFENDANT JOSE DIAZ'S MOTION
FOR DISCOVERY AND DEFENDANT CHRISTIAN REYES'S MOTION TO
JOIN CO-DEFENDANT'S MOTION FOR DISCOVERY
(Dkt. Nos. 91 & 92)

ROBERTSON, M.J.

I. INTRODUCTION

Before the court is a motion for discovery filed by defendant Jose Diaz ("Diaz"), in which he is joined by his co-defendant, Christian Reyes ("Reyes") (collectively, "Defendants") (Dkt. Nos. 91 and 92). The government opposed the motions and Diaz filed a reply to the government's opposition. Defendants' motions were referred to the undersigned for decision. After hearing on October 6, 2015 and for the following reasons, Defendants' motions are DENIED.

II. RELEVANT BACKGROUND

Diaz has been charged with one count of conspiracy to distribute and possession with intent to distribute heroin and three counts of distribution and possession with intent to distribute heroin. Reyes faces similar, albeit not identical, charges. The government summarizes its evidence as follows: on December 20, 2013, a cooperating witness ("CW") purchased heroin from Diaz. On January 22, 2014, the CW called Diaz and arranged to purchase more heroin. Diaz met the CW; Reyes delivered the heroin to the CW in Diaz's presence. On January 24,

2014, the CW arranged to purchase more heroin. The CW did not make the purchase because someone alerted Diaz to the presence of law enforcement at the location identified for the sale. While Reyes was driving to the alternate location agreed on by Diaz and the CW, Reyes was arrested with heroin in his possession. The CW consented to the DEA recording his telephone conversations with Diaz and each sale of heroin to the CW was audio recorded (Dkt. No. 93 at 1-3). The government acknowledges its discovery obligations as to these recordings, and, although it does not directly say so, implies that copies of this material have been produced (*id.* at 4-5).

### III. DISCUSSION

Defendants' motions seek an order, pursuant to Federal Rule of Civil Procedure 16 ("Rule 16") and 18 U.S.C. §§ 2515 and 2518, compelling the government to produce information in two categories: (1) audio-recordings of intercepted statements made by Diaz during the latter part of 2011 and continuing into March 2012; and (2) copies of state court warrant applications and returns related to interceptions of Diaz's oral and wire communications in the same timeframe (Dkt. No. 91 at 1; Dkt. No. 94 at 1). Defendants argue that they are entitled to production of this material because even if the government does not intend to use the material in its case in chief, it may do so for purposes of impeachment, and they are, accordingly, entitled to discovery of Diaz's statements and of information that would enable them to challenge the legality of the intercepts (Dkt. No. 91 at 2). Defendants concede that the requested information is not exculpatory. Disclosure, therefore, is not required under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.[1] The government represents that it does not have the information

---

[1] Under *Brady*, the prosecution in a criminal case has an obligation to disclose information in its possession that is favorable to the defendant and material to the question of guilt or punishment. *See, e.g., United States v. Tsarnaev*, Criminal Action No. 13-10200-GAO, 2013 WL 6196279 (Nov. 27, 2013), at *1. Generally, *Brady* material falls into two categories: evidence which

requested in its possession or custody and does not intend to use this information in its case in chief against Defendants. It further contends that neither Rule 16 nor the federal surveillance statute obligates it to produce information related to electronic surveillance conducted under state court authority in a timeframe unrelated to the charges in this case (Dkt. No. 93 at 4). For the reasons set forth below, the court agrees.

1. Diaz's statements

Recordings of a defendant's statements implicate Federal Rule of Criminal Procedure 16(a)(1)(B)(1), which provides:

> Upon the defendant's request, the government must disclose to the defendant . . . any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody or control, and the attorney for the government knows – or through due diligence could know – that the statement exists.

Fed. R. Crim. P. 16(a)(1)(B)(1). By its terms, the Rule establishes four requirements for disclosure of information to a defendant. First, the rule governs only the written or recorded statements of a defendant, a requirement apparently not disputed here. Second, the government's production obligation extends only to statements that are relevant. Third, the government must have possession, custody or control of the statements; and fourth, the government's attorney must have knowledge, or the ability to obtain knowledge, of the existence of any statement sought by a defendant. *See United States v. Pesaturo*, 519 F. Supp. 2d 177, 187 (D. Mass. 2007).

The United States Court of Appeals for the First Circuit considered the definition of relevance for purposes of Rule 16 in *United States v. Lanoue*, 71 F.3d 966, 974 (1st Cir. 1995), *abrogated on unrelated grounds*, 117 S.Ct. 633 (1997). The First Circuit held that a defendant's

---

tends to be directly exculpatory and impeachment evidence, which tends to be indirectly exculpatory in that it tends to undermine the reliability of other prosecution evidence. *See id.*

statement is relevant within the meaning of Rule 16(a)(1)(A) "if it ha[s] 'any tendency to make the existence of any fact that [is] of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (citing Fed. R. Evid. 401). "Relevance is to be interpreted broadly in the context of Rule 16(a)(1)(A)." *Id.* "Ordinarily, a statement made by the defendant *during the course of the investigation of the crime charged should be presumed to be subject to disclosure*[.]" *United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982) (emphasis supplied). Nonetheless, "Rule 16(a)(1)(A) contains no exception for a defendant's recorded statements if they are obtained in connection with a separate investigation, *so long as they are relevant to the pending case.*" *Lanoue*, 71 F.3d at 974 (emphasis supplied).

The primary weakness in Defendants' requests for disclosure of Diaz's intercepted statements from 2011 and 2012 is the failure to establish the relevance of those statements to the instant charges.[2] The indictment charges either or both Defendants with possession and distribution of narcotics on December 20, 2013; January 22, 2014; January 24, 2014; and with a conspiracy beginning at an unknown time and continuing through January 24, 2014 (Dkt. No. 3). The intercepted statements made by Diaz and now sought by Defendants were not made during the time period of the three specific transactions alleged in the indictment. Although the conspiracy count is open-ended as to the date of its commencement, the government's summary of its anticipated evidence does not implicate any events occurring nearly as early as March 2012. Defendants have not suggested that Diaz made any statements in these intercepted

---

[2] By its terms, Rule 16 applies to statements made by "a defendant," not to statements made by a co-defendant. Reyes would not have the same rights under Rule 16 as does Diaz to discovery of statements made by Diaz. As a practical matter, if the government were to turn statements over to Diaz, he could, through counsel, make the statements available to Reyes. Accordingly, Reyes's right to discovery of Diaz's statements is not separately considered herein.

conversations that relate to his alleged involvement in heroin distribution in late 2013 and early 2014. Given this timing and the absence of any charges against either defendant related to transactions or other activities in 2011 or 2012, Defendants have not shown that any statements by Diaz in that timeframe are likely to contain information and evidence about the facts and circumstances of the offenses charged in the instant indictment. *Contrast Pesaturo*, 519 F. Supp. 2d at 188-189.

In addition, the government has no obligation to produce evidence outside of its possession, custody or control. *See United States v. Poulin*, 592 F. Supp. 2d 137, 142 (D. Me. 2008) (citing Fed. R. Crim. P. 16(a)(1)(E)). The government represents that it does not possess or have custody of the intercepts authorized in 2011 and 2012 by the state court. Notwithstanding Defendants' representations about a joint task force and common players in certain state court charges against others in 2012 and the instant charges against Defendants, the intercepts were authorized by the state courts and are presumably in the hands of state law enforcement. "The weight of appellate authority teaches that the term 'government' in Rule 16 does not encompass local law enforcement offices[.]" *Id.* at 142-143 (collecting cases).

Of course, the government cannot have it both ways. "Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy[.]" *Lanoue*, 71 F.3d at 976. The government's disclosure obligations under Rule 16(a)(1) (A), therefore, apply to exculpatory *and* inculpatory statements, and to statements relevant to guilt *and* punishment. *See Pesaturo*, 519 F. Supp. 2d at 189; *see also Lanoue*, 71 F.3d at 975-976. In *Lanoue*, the First Circuit held that the government's failure to disclose statements made by the defendant during telephone calls he made while he was incarcerated was

a violation of Rule 16, "regardless of *when or [even] whether* [the prosecutor] intend[ed] to use them." *Lanoue*, 71 F.3d at 975 (emphasis supplied). At oral argument on Defendants' motions, the government attempted to leave open the possibility that it might use Diaz's 2011 and 2012 statements for impeachment purposes if the government happened to come into possession of those statements, even if it had not previously turned over copies of the statements to Diaz. If recordings or transcripts of statements made by Diaz in the 2011 and 2012 timeframe come into the possession or custody of the government, they must be produced to Diaz even if the government does not intend to use the statements in its case in chief, or for impeachment or for sentencing. Certainly, if there is any possibility of the government's use of any such statements in relation to the pending charges, including for purposes of impeachment or sentencing (i.e., if they are relevant to any stage of the instant proceedings), then recordings or transcripts of the statements must be turned over to Diaz as soon as any such material comes into the government's possession. Any other course would be a violation of the government's discovery obligations under Rule 16(a)(1)(A). *See id.*

    2. <u>Warrant applications and returns related to interceptions</u>

Separate from constitutionally required disclosure by the government of exculpatory material, Rule 16 . . . requires the prosecution in a criminal case to provide certain information in its possession to the defense, including, *inter alia*, items that are material to the defense. *See Tsarnaev*, 2013 WL 6196279, at *3. Defendants' motions seek copies of the warrant applications and returns related to 2011 and 2012 interceptions of statements by Diaz, apparently on the theory that these materials might furnish support for a motion to suppress any such statements to the extent they were illegally intercepted (Dkt. 91 at 2). Defendants rely primarily on Section 2515 of Chapter 18, which requires the suppression of illegally intercepted wire

communications and 'evidence derived therefrom.'" *United States v. Smith*, 155 F.3d 1051, 1059 (9th Cir. 1998) (quoting 18 U.S.C. § 2515).

Under Rule 16, "[t]he information requested to be produced must be 'material' to the defense, and the defendant bears the burden of making a 'prima facie showing of materiality.'" *Tsarnaev*, 2013 WL 6196279, at *4 (citing *United States v. Bulger*, 928 F. Supp. 2d 305, 324) (D. Mass. 2013)). The government is required to produce the requested information only if the defendant shows that the information will have a significant effect on the defense. *See id.* "In the Rule 16 context, materiality depends on 'not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole.'" *Id.* (quoting *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 125 (2d Cir. 2008)).

Defendants apparently seek production of the warrant applications and returns related to the interceptions of Diaz's 2011 and 2012 statements on the basis that these documents might enable them to bar any use by the government of such statements for impeachment purposes if the statements were illegally intercepted. The government represents, however, that it has no intention of using statements made by Diaz in 2011 or 2012 in its case in chief (Dkt. No. 93 at 1-4). The government "generally may use otherwise inadmissible evidence in order to impeach a testifying criminal defendant." *United States v. Richardson*, 515 F.3d 74, 84 (1st Cir. 2008) (citing *United States v. Morla-Trinidad*, 100 F.3d 1, 4 (1st Cir. 1996); *Williams v. Pouolos*, 11 F.3d 271, 287 (1st Cir. 1993)); *see also Walder v. United States*, 347 U.S. 62, 64-64 (1954) (illegally obtained evidence admissible for impeachment purposes). Any intercepted statements made by Diaz in 2011 or 2012 will not come into evidence in the government's case in chief, and evidence that may have been illegally seized remains admissible for impeachment purposes.

Moreover, in view of the apparent strength of the government's case as to the transactions in 2013 and 2014, any statements made by Diaz in 2011 and 2012 would appear to lack importance in light of the evidence as a whole. Because Defendants have not made a prima facie showing that the warrant applications and returns are material to their defense within the meaning of Rule 16, the government has no obligation to obtain or produce them. *See, e.g., Tsarnaev*, 2013 WL 6196279, at *4.

IV. CONCLUSION

For the reasons set forth above, Defendants' motions for discovery are DENIED.

It is so ordered.

Dated: November 3, 2015                            /s/ Katherine A. Robertson
                                                   KATHERINE A. ROBERTSON
                                                   U.S. MAGISTRATE JUDGE